David J. HANSON, Appellee,

v.

Lisa M. HANSON, Appellant.

Superior Court of Pennsylvania.

Submitted May 9, 2005.
Filed June 21, 2005.

Raymond W. Bulson, Portville, NY, for appellant.

Stephen J. Banik, Wellsboro, for appellee.

BEFORE: LALLY–GREEN, McCAFFERY, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this close custody case the trial court was forced to "choose" between two equally capable parents. We affirm the trial court's custody order, based not on whether the trial court made the "right" decision, but rather on our conclusion that, consistent with our limited and deferent scope and standard of review, the trial court did not err or abuse its discretion.

¶ 2 Lisa M. Hanson (Mother) appeals from the trial court order awarding David

J. Hanson (Father) primary physical custody of their sons D. and B., who are ten years old and eight years old, respectively. Mother contends that based on the evidence presented, it would be in the children's best interest for her to have primary custody. Finding no error or abuse of discretion in the trial court's decision, we affirm the order granting Father primary physical custody of D. and B.

¶ 3 This custody dispute arises from Mother's and Father's separation in May 1999 and their subsequent divorce in 2004. D. and B. are the only children of their marriage. Mother lives on her family's dairy farm in New York with her boyfriend of four years, John Stokes, their three-year-old child, and Mother's nineteen-year-old son from a previous relationship. Prior to this custody determination, Mother had primary custody of the boys under an interim custody arrangement. Although B. was doing well with Mother, D. showed serious behavioral problems at school. After school, the children would go to Mother's workplace, a dispatch office for a trucking company. They did not participate in any out-of-school activities. In addition, Mother was not diligent in making regular dentist appointments for the boys or in scheduling and keeping doctor appointments for B., even though he has a blood vessel disease that requires him to see his doctor frequently.

¶ 4 Father lives in Coudersport with Tracy Baker, his girlfriend of three years. Although he did not have primary custody under the interim custody arrangement, he maintained regular contact with the boys. Under Father's care, the children participated in activities and interacted more as a family, especially in the town park in which Father's home is located. Father and Ms. Baker have established more of a family structure as well. The trial court specifically found that the boys have posi-tive relationships with their parents and their parents' paramours, although their relationship with Ms. Baker is to some degree weaker because she imposes more structure and discipline than the others.

¶ 5 Mother and Father have a strained relationship with only limited communication between them. Once Father discovered Mother's infidelity and the parties separated, Mother obtained a protection from abuse order against Father. Around this same time in 1999, Father attempted suicide and was hospitalized at the Bradford Hospital Psychiatric Unit. The trial court noted that communication and cooperation will more likely occur between the parents' paramours than between the parents themselves.

¶ 6 Father first filed a complaint for divorce on January 17, 2002. Attempts at mediation failed, but until a final order was issued, Mother retained primary physical custody of the children. On October 11, 2004, the divorce proceedings were bifurcated, and a divorce decree was entered immediately thereafter. That same day, the Court of Common Pleas of Potter County held a hearing on the issue of custody. The children, their parents, and their parents' paramours all testified at the hearing. Following the custody hearing, the trial court entered an order awarding Father primary physical custody of the boys. Mother was awarded temporary physical custody, including alternating weekends, summer vacation time, and a rotating holiday schedule. The court also ordered the parties to share legal custody. Mother promptly appealed the custody decision.

¶ 7 Mother raises the following questions for our review:

1. Did the [trial] Court reach the right conclusion based on all of the evidence presented?

2. Did [Father] prove that it is in the best interest of the children for him to have custody of both children?

Brief for Appellant at 4. These questions are not consistent with our scope and standard of review.

> Our paramount concern and the polestar of our analysis in this case, and a legion of prior custody cases, [is] the best interests of the child .... On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, ... we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. Further, on the issues of credibility and weight of the evidence, we defer to the findings of the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

*Arnold v. Arnold,* 847 A.2d 674, 677 (Pa.Super.2004) (quotation marks and internal citations omitted) (brackets in original). It is not our function to determine whether the trial court reached the "right" conclusion, or whether Father sustained his alleged burden of proof. Rather, we consider whether, based on the evidence presented and giving due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in determining that it is in the children's best interest for Father to have primary physical custody. *See Id.*

¶ 8 Mother first contends that her household has more structure than Father's household, and specifically asserts

that she and her paramour have a "routine" and impose greater discipline. Brief for Appellant at 8. The trial court, on the other hand, found that Father and Ms. Baker provide more structure and discipline. We find ample evidence to support the court's finding.

¶ 9 D. told the court that the atmosphere at Father's home is calmer than it is at Mother's home. Notes of Testimony, 10/11/04 (N.T.), at 71. B. agreed, and he also said that Father and Ms. Baker are stricter. N.T. at 81–82, 83. Father's household promotes healthy activities, like playing outside as a family. N.T. at 9, 34. Father testified that his children's desire to live with him is the result of "the stress ... from [living at Mother's home]. They have fun at my house. We're involved with them constantly. We're doing activities with them." N.T. at 35. Ms. Baker described their daily activities as a family, saying "We all go for bike rides, state parks looking for Elk. We take them to baseball fields out back, teach, play baseball. We try to entertain them and teach them things." N.T. at 86. Furthermore, Father and Ms. Baker discipline the children when necessary. N.T. at 21, 86–87. This evidence supports the trial court's conclusion that Father and Ms. Baker provide a sufficiently stable, structured environment for the children.

¶ 10 In addition, the trial court noted that Mother has been "less than attentive" in meeting the children's needs. Findings of Fact, 10/24/04, at 2 ¶ 16. Mother missed several doctor's appointments for B., and she did not take the children to the dentist for regular appointments, resulting in what Father called "terrible" dental hygiene. N.T. at 16, 18. Thus, we cannot conclude that the trial court erred or abused its discretion in its decision that Father and Ms. Baker provide more structure for the children.

¶ 11 Next, Mother argues that it is in the children's best interest for her to have primary custody based on the evaluation submitted by John Goga, M.D. She states that Dr. Goga noted no parenting problems regarding Mother and Mr. Stokes, but that Father sometimes overindulges his children and is more lenient than Ms. Baker. Brief for Appellant at 8–9. Mother also notes that the evaluation stated that Father was abused and is likely to manifest unresolved mental health problems, like being guarded and cautious in relationships if he feels vulnerable. Brief for Appellant at 9. Finally, she maintains that Father takes medication for depression. Brief for Appellant at 9.

¶ 12 First, we will not re-weigh evidence. *See Arnold,* 847 A.2d at 677. Second, despite Dr. Goga's evaluation, the court evidently concluded that Father is psychologically capable of caring for his children. Such a finding is supported by Father's testimony that he is not a danger to himself, that he sought treatment, and that he has maintained a stable life for five years. N.T. at 12–13. Moreover, we find ample support that Father is a suitable parent, despite the actual or potential psychological problems noted by Dr. Goga. Father spends "as much [quality time] as possible, riding bikes, et cetera" with his boys. N.T. at 9. At the hearing, Father also told the court that if awarded custody, the boys would "be involved in sports, [have other neighborhood] children right out [the] back door of [his] house, all the little league fields, sporting." N.T. at 34. He is willing to help them with their school work, and is well aware of their academic performances. N.T. at 34, 19–22, 29. He later testified why he thought he should be awarded primary custody of the children:

At our house we're with them plenty of time, we're outside playing in the park with them, going to look for Elk or various activities [at] Letchworth Park.

We're always doing stuff with them to be involved with [the] children's lives. The children aren't second best, they are the best. They come first for everything.

N.T. at 36. Finally, Father appropriately disciplines the children when necessary. N.T. at 21. Thus, we find that the allegations in Dr. Goga's report do not demonstrate that the trial court abused its discretion in awarding Father primary custody.

¶ 13 Mother's final support for her argument on appeal is that B. testified that Ms. Baker is "kind of mean" and "yells at us." Brief for Appellant at 10 (quoting Notes of Testimony, 10/11/04 (N.T.) at 76). This does not demonstrate that the trial court abused its discretion in determining that it was in the boys' best interest for them to live primarily with Father and Ms. Baker. Father testified that Ms. Baker's current relationship with the boys is "real good." N.T. at 14. He admitted, though, that the kids went through "a little bit of adjustment having somebody else in their lives, but they've come along pretty good." N.T. at 14. D. testified that Ms. Baker is stricter than Mother, but that he gets along with Ms. Baker. N.T. at 57.

¶ 14 While we find ample evidence to sustain the trial court's decision, we very likely would have found ample evidence to sustain the court's decision if it ruled in favor of Mother. The trial court faced a difficult decision. Trial Court Opinion, 10/20/04, at 4 ("Both parents as well as their paramours are essentially competent, caring people, and neither represents a danger of any type to the children involved.") In these circumstances, the court's custody decision is often an "imperfect and often painful" solution for the parties. *See Baldwin v. Baldwin,* 710 A.2d 610, 614 (Pa.Super.1998).

[T]here is no black letter formula that easily resolves [custody] disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis. Here, the trial court was faced with the difficult task of determining, based on many relevant and competing interests, ... the child's best interests .... As an appellate court, we should not substitute our judgment for that of the trial court; rather, we are merely to decide if the conclusions of the trial court involve an error of law or are unreasonable in light of the sustainable findings of the trial court. We find the trial court's conclusions reasonable in light of its factual findings and will not disturb them on appeal.

*Id.* (internal citations omitted). Despite the difficult decision it faced, the trial court found that it was in the children's best interest to assign custody to Father. Although Mother fervently believes that she is the better custodial parent, she failed to demonstrate that the trial court committed an abuse of discretion or an error of law in holding to the contrary.

¶ 15 Order **AFFIRMED.**