J-A19032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| T.C.M., | : | |
| | : | |
| Appellant | : | No. 745 EDA 2017 |

Appeal from the Order entered January 26, 2017
in the Court of Common Pleas of Montgomery County,
Civil Division, No(s): 2016-09945

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 21, 2017**

T.C.M. ("Father") appeals from the Order (hereinafter, "the Custody Order") granting J.M. ("Mother") primary physical custody, and shared legal custody, of K.M. (born in November 2000), A.M. (born in August 2003), and L.M. (born in October 2006) (collectively, "the Children"), and granting Father partial physical custody and shared legal custody.[1]  We affirm.

The trial court summarized the relevant factual and procedural history of this appeal, which we incorporate as though fully set forth herein.  ***See*** Trial Court Findings of Fact, 1/26/17, at 1-4.

The trial court entered the Custody Order on January 26, 2017.  On the same date, the court issued its Findings of Fact, wherein it addressed the seventeen custody factors (hereinafter, "the best interest factors") set forth in

---

[1] The Custody Order provided that, during the Children's summer vacation from school, Father and Mother shall have shared physical custody.

subsection 5328(a) of the Child Custody Act ("the Act"). *See* 23 Pa.C.S.A. § 5328(a).

Father timely filed a Notice of Appeal, followed by a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of errors complained of on appeal, presenting eighteen separate issues. The trial court then issued a Pa.R.A.P. 1925(a) Opinion (hereinafter, the "Rule 1925(a) Opinion").

Father now presents the following questions for our review:

   A.  Whether the [trial] court abused its discretion and committed an error of law in weighing the [best interest] factors by granting [] Mother primary custody of the Children?

   B.  Whether the [trial] court properly applied the [best interest] factors in analyzing the best interests of the Children?

   C.  Whether the [trial] court abused its discretion and committed an error of law in denying [] Father the opportunity to participate in the Children's daily lives?

   D.  Whether the [trial] court deviated from applicable standards in establishing a schedule of when [] Father would be able to have physical custody of the Children individually and together?

Father's Brief at 5-6 (issues renumbered for ease of disposition, capitalization omitted).

"We review [a] trial court's custody order for an abuse of discretion." *M.G. v. L.D.*, 155 A.3d 1083, 1091 (Pa. Super. 2017). In conducting this review,

   [t]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the

reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citation, ellipses and brackets omitted). This Court has further explained that

[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial court[,] who has had the opportunity to observe the proceedings and demeanor of the witnesses. The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. The test is whether the evidence of record supports the trial court's conclusions.

*Id.* (citations, paragraph breaks and brackets omitted); *see also Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (stating that "[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.") (citation omitted).

In any custody case, the primary concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338; *see also M.G.*, 155 A.3d at 1091. In assessing the child's best interest, the trial court must consider the best interest factors, enumerated at subsection 5328(a) as follows:

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328. "All of the [best interest] factors … are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted).

Subsection 5323(d) of the Act mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). "In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated [best interest] factors are considered and that the custody decision is based on those considerations." ***A.V.***, 87 A.3d at 823 (citation and quotation marks omitted); ***see also id.*** (stating that "[a] court's explanation of reasons for its

decision, which adequately addresses the relevant factors, complies with Section 5323(d).").

Here, we will address Father's first three issues together, as they are closely related, and all essentially challenge the trial court's weighing of the best interest factors.

In his first issue, Father contends that the trial court "erred in making factual findings that suggested that both Mother and Father were capable of [exercising] primary physical custody, but then granted [primary] physical custody to [] Mother."  Father's Brief at 16.  Father additionally argues that "[t]he [trial] court's findings of fact[] are not reasoned, and instead, make prejudicial statements in favor of [] Mother, such as 'Mother worked as the CEO of the family.'  The [trial] court frowned upon [] Father being a surgeon and physician."  **Id.** at 17-18 (quoting Trial Court Findings of Fact, 1/26/17, at 9).

In his second issue, Father asserts that the trial court improperly applied the best interest factors in analyzing the best interests of the Children.  Father's Brief at 18.  Father urges that "[t]here is no dispute that [he] is able, available and wanted to have physical custody of the Children[, yet he] … was only entitled to one overnight per week with all three Children at the same time."  **Id.** at 21; **see also id.** at 22, 23 (asserting that such custody schedule causes disruption in Father's relationship with the Children and "separation among the Children").  Father additionally argues that the

trial court overlooked that (1) Mother made disparaging comments to the Children concerning, *inter alia*, Father's alleged alcohol abuse; (2) in contradiction of Mother's claim that Father is an alcoholic, Father submitted an "expert report" opining that Father "had a low probability of having an alcohol [] abuse" issue; and (3) paternal grandmother had often helped Mother care for the Children. ***Id.*** at 22, 23; ***see also id.*** at 22 (asserting that Mother's testimony at the custody hearing was not credible).

In his third issue, Father argues that the trial court improperly denied him the opportunity to participate in the Children's daily lives. ***Id.*** at 30. According to Father,

> [t]here is no evidence in the record that [he] did not participate in the Children's daily well-being. The [trial] court stated in its [Rule 1925(a)] [O]pinion that the "majority of the household duties had always been, and currently were still, performed by Mother." "Household duties" is not a statutory factor in awarding primary physical custody. Such an arbitrary statement punishes [] Father for being a physician and surgeon.
>
> * * *
>
> Moreover, if [] Father is able to maintain fifty percent [physical] custody during the summer, when there are still household chores to be done and [] Father still works, it is unreasonable to suggest that the factors must change during the school year.

***Id.*** at 32-33 (citations omitted). Father further points out that the trial court found that "Father is also an involved, loving, doting parent[,] who attends to the[] [Children's] activities, participates in school programs and always makes time to engage with the [C]hildren." ***Id.*** at 34 (quoting Rule 1925(a) Opinion, 3/31/17, at 15). Father contends that this finding "contradicts" the

trial court's awarding primary physical custody to Mother. Father's Brief at 34.

In its Findings of Fact, the trial court thoroughly addressed all of the best interest factors, and determined that it was in the Children's best interests to award Mother primary physical custody during the school year. **See** Trial Court Findings of Fact, 1/26/17, at 4-12. Additionally, the court addressed Father's above-described claims in its Rule 1925(a) Opinion, adeptly summarized the relevant law, and determined that the court did not abuse its discretion in weighing the best interest factors, or in awarding Mother primary physical custody during the school year. **See** Rule 1925(a) Opinion, 3/31/17, at 6-9, 14-17. As the trial court's analysis is sound, and the record supports its factual findings, we incorporate it herein by reference. **See** Rule 1925(a) Opinion, 3/31/17, at 6-9, 14-17; Trial Court Findings of Fact, 1/26/17, at 4-12. Like the trial court, we decline Father's invitation to disturb the court's findings and weighing of the evidence, in favor of the findings and custody arrangement that Father proposes. **See M.J.M. v. M.L.G.**, 63 A.3d 331, 337 (Pa. Super. 2013) (rejecting appellant/mother's argument asking this Court to reconsider the trial court's findings and credibility determinations with regard to the best interest factors); **see also A.V.**, **supra** (stating that a reviewing court should defer to the trial court on issues of credibility and weight of the evidence). Accordingly, as the trial court's sound analysis of the best interest factors was careful and thorough,

and we discern no abuse of the court's discretion in fashioning a reasonable award of physical custody that was in the Children's best interests, we defer to the court's decision. **See A.V.**, **supra** (stating that "[a]ppellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion."); **see also id.**, **supra**, (stating that a reviewing court may not interfere with a trial court's conclusions where they are reasonable in view of the trial court's factual findings). We thus affirm on the basis of the trial court's Rule 1925(a) Opinion and Findings of Fact as to Father's first three issues. **See** Rule 1925(a) Opinion, 3/31/17, at 6-9, 14-17; Trial Court Findings of Fact, 1/26/17, at 4-12.

In his final issue, Father argues that the trial court rendered an "arbitrary" physical custody award, which "was in deviation of the statutory guideline and not in the Children's best interests[,]" where "Father only has [all] three Children together four times a month over a ten month period, even though [Father] lives near [] Mother, closer to [the Children's] school, [and] on the bus route …." Father's Brief at 25-26. Father urges that

> [t]he better solution to meet the Children's best interests was … [to award the parties] shared physical custody[, and] … a more balanced schedule[,] where all three Children could stay with [] Father together more than four nights per month during the school year, [which is] … a disproportionate [and] unjustified holding. … The arbitrary decision of the [trial] court does not reflect the reasoning as to why [] Father can have the Children together 4 nights [per month] during ten months out of the year, and fifteen nights [per month] for two summer months.

***Id.*** at 29.

In its Rule 1925(a) Opinion, the trial court explained that it (1) had considered the Children's "articulate and well reasoned" desires for a physical custody schedule that was best suited to their respective individual needs; and (2) was cognizant that the court had fashioned an unconventional custody schedule, whereby the Children were not always together during Father's custodial time, and each had a slightly different schedule. ***See*** Rule 1925(a) Opinion, 3/31/17, at 10-11. The court determined that, nevertheless, it was appropriate, and in the Children's respective best interests, to employ a physical custody schedule that the Children expressed they prefer, even though it does not ensure that the Children are all together at all times. ***Id.*** The trial court's reasoning is sound and supported by the record, and we discern no abuse of the court's discretion in finding that the unconventional physical custody schedule put into place was in the Children's best interests.[2] Accordingly, we affirm on this basis in rejecting Father's final issue. ***See id.***

Order affirmed.

_____

[2] Our determination is unaltered by Father's pointing out that that he was awarded shared physical custody during the Children's summer vacation, but not during the remainder of the year. The trial court found that such arrangement was the one best suited to the Children's best interests, and their expressed preferences. ***See*** Rule 1925(a) Opinion, 3/31/17, at 8-9 (stating, *inter alia*, that "the [C]hildren have a very strong preference towards spending more time in Mother's household during the school year in order to provide them with consistency and stability, especially in their academic pursuits."); ***see also id.*** at 10-11. Contrary to Father's assertion, this physical custody arrangement is neither arbitrary nor unreasonable.

J-A19032-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2017

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
### FAMILY DIVISION

J███ M████████    :   NO. 2016-09945

          :

          :   Seq. 8 (5/20/16) Defendant's

          :   Emergency Petition for Custody

   vs.        :

          :   Seq. 9 (5/24/16) Plaintiff's

          :   Answer and New Matter

T███ C. M████████    :

          :

          :

## FINDINGS OF FACT

### I. History of the Case

     J███ M████████ ("Mother") and T██ C. M████████ ("Father") are the parents of three minor children: K███ M████████ (date of birth: November█ 2000, age 16), A███ M████████ (date of birth: August█ 2003, age 12) and L██ M████ (date of birth: October█ 2006, age 10).

     On October 9, 2015, the parents separated and Father moved out of the marital residence, located at ████ Royal Oak Drive, Blue Bell, PA 19422. Mother and the three children have lived primarily at the martial residence since that date. After Father moved out of the marital residence, the parties jointly decided that Father would have custody of the children on Monday afternoons and Thursday afternoons and every Friday after school, overnight to Saturday between 3:00 p.m. and 7:00 p.m. This arrangement was constructed based on what the parties felt was in the best interests of each of the children and was extremely flexible to take the children's extra-curricular activities and school work into consideration. On many occasions, one or more of the children did not go with Father because of schoolwork or other activities.



THIS DOCUMENT WAS DOCKETED AND SENT ON 01/26/2017

When he first moved out, Father rented a three bedroom townhouse located at ⬛ Wick Lane, Blue Bell, PA 19422. In October 2016, he purchased and moved into a home at ⬛ Amour Circle, Blue Bell, PA 19422. On May 18, 2016, Mother filed a Complaint in Divorce, which included a Custody Count in in which Mother sought primary custody of the children.

Among the issues that led to the parties' separation was Father's use of alcohol and its impact on Mother and the family. On April 30, 2016, at approximately 11:00 p.m., Father was involved in a two-vehicle car accident in Montgomery County. As a result, Father was charged with Driving Under the Influence and related traffic offenses.

On May 20, 2016, Father filed an Emergency Petition for Custody seeking (1) shared legal custody of the children; (2) shared physical custody of the children as set forth in his proposed order; (3) a nesting arrangement whereby Mother has custody of the children during the week and Father has custody of the children on the weekends, with the non-custodial parent moving out of the marital residence when he or she does not have custody of the children; (4) Father having custody of the children every Monday after school until 8:00 p.m. during the school year and during the summer, from 1:30 p.m. overnight to 12:00 p.m. the following Tuesday; (5) Father having physical custody of the children every Thursday from 3:00 p.m. to 8:30 p.m.; and (6) shared holidays and vacations.

On May 24, 2016, Mother filed an Answer and New Matter to Father's Emergency Petition in which she requested that Father be directed to undergo hair follicle testing, participate in an alcohol assessment and that Father's overnight custody with the children be suspended until further order of Court or Agreement of the parties.

On May 25, 2016, after a phone conference with counsel in connection with Father's Emergency Petition, the Honorable Risa Vetri Ferman entered an

Interim Custody Order which provided that (1) the parties shall comply with the oral custody agreement in place since October 2015; (2) Father shall undergo a drug and alcohol evaluation and a hair follicle test, the results of which shall be provided to Mother's counsel; (3) Father shall not drive with the children unless mutually agreed upon by the parties; (4) an expedited custody conciliation shall be scheduled; and (5) incorporating the general rules of conduct.

On June 16, 2016, after conciliation, the parties entered into an Agreed Custody Order regarding custody of their children for the summer of 2016. It provided that (1) Mother had primary custody of the children; (2) during the summer Father had physical custody from Thursday at 1:00 p.m. until Saturday at 4:00 p.m. and overnight on every other Monday, beginning July 11, 2016 and on interim Mondays from 1:00 p.m. until 9:00 p.m.; (3) neither parent shall consume alcohol during his/her custodial time; (4) the parties shall participate in co-parent counseling; (5) the children shall attend Sunday services at Fairview Village; and (6) directing that the children shall be interviewed in August.

On August 16, 2016, Custody Conciliator Sara Goren interviewed the three children and thereafter on August 19, 2016 she issued a Conciliation Report.

Since the beginning of the 2016-2017 school year, the Court's May 25, 2016 Order has been in effect. However, Mother has agreed that Father shall also have custody of their son L██ overnight on Mondays.

On October 11, 2016, the undersigned held a short list conference in connection with Father's Emergency Petition for Custody and Mother's Answer and New Matter. After the short list conference, the Court entered an Order directing the parties to attend co-parent counseling and for the children to

participate in family counseling. The Court held a protracted hearing on January 6, 2017.

After the hearing concluded, the Court gave the parties until January 20, 2017 to submit any post-trial memoranda and proposed orders. In addition, the Court permitted Father, by agreement of counsel, to submit a confidential document. Thereafter, Mother's counsel submitted a proposed order and Father's counsel submitted both the confidential document along with a letter to the Court, which included extensive ex-parte argument. Mother's counsel correctly objected to the inappropriate nature of the letter. The Court has not considered the substance of Father's letter in any manner.

## II. Custody Factors

In ordering any form of custody, the Court shall determine the best interests of the children by considering all relevant information pursuant to the Custody Factors set forth in 23 Pa. C.S.A. § 5328 (a), giving weighted consideration to those factors which affect the safety of the children. The Court's analysis of those factors is detailed below:

### (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

The Court finds that Mother is more likely to encourage and permit frequent and continuing contact between the children and Father, as she has demonstrated consistently since the parties' separation. When the parties first separated, they established a schedule by agreement, but have been flexible since that time. Mother maintains the children's schedules and ensures that Father is aware of their events so he may attend and participate. Mother has routinely agreed to expand Father's time with the children beyond that which was previously agreed.

This factor favors Mother.

*(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision for the child.*

There is no evidence that either party has ever abused the children, thus this factor is neutral.

*(3) The parental duties performed by each party on behalf of the child.*

Mother has been the primary caregiver of the children and the administrator of the household since they were born. Mother gave up her career as a high school English teacher at Lower Merion High School to be the children's full-time caregiver. Even on nights when the children are with their Father, Mother continues to transport the children to and/or from some of their activities.

Since the parties' separation, when the children are with Father he has been fully capable of performing all required parental duties. Father is extremely loving and engaged in the lives of his children. Despite his schedule and the obvious demands of his professional life, Father makes sure he is available for his children during his custodial time and during their activities. Father makes the children a priority in his life. The children love him and cherish their time together. Mother still maintains her role as the organizer and coordinator of all activities and the children rely on her to maintain the consistency of their home lives.

This factor is neutral.

*(4) The need for stability and continuity in the child's education, family life and community life.*

The Court finds that Mother can provide better stability and continuity in the children's education, family life and community life. Mother has been the

children's primary caretaker for their entire lives. She is the parent the children turn to when they have issues with school or friends. She is involved in their school and their church. She makes sure their homework is completed and they get to their extracurricular activities. She also handles all of their school paperwork, and schedules and takes them to all of their medical/dental/orthodontia appointments. Mother has been and will be the stable presence in the children's lives. The Court finds that the children rely on Mother to ensure this stability.

This factor favors Mother.

### (5) The availability of extended family.

Mother's parents live 25 minutes from the marital residence and are available to help Mother when she needs it. Father's parents are one hour and 15 minutes away and they also have committed to being available if they are needed.

This factor is neutral.

### (6) The child's sibling relationships.

The children have a close and good relationship. They enjoy spending time together, but also look forward to the time they can each have alone with their parents.

This factor is neutral.

### (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

The Court interviewed all three children separately. The interviews were conducted in camera and on the record. Both parents agreed to waive their counsel's presence for the interviews.

All three children presented as thoughtful, kind, mature and compassionate individuals. Each of them was intelligent, articulate and well reasoned in their thinking and possessed a clear ability to articulate their thoughts and wishes. Each of the children demonstrated good judgment and good sense in explaining their preferences to the Court. The Court gives significant weight to the preferences expressed by the children because their opinions each reflected an understanding of what best suited their personal needs without bias towards or against either parent. It was clear to the Court that the children love both of their parents.

The Court finds that current custody schedule, though unconventional in the manner in that each child has a slightly different schedule, is the schedule that the children currently prefer and that this Court finds meets the best interests of each child individually. The Court credits the parents' willingness to create a schedule that is clearly not in either parent's best interests, but instead best suits the needs of each child.

The youngest child, son L███ (10), enjoys spending one on one time with his Father, which he gets during his Monday overnights without his sisters. This is important Father/son bonding time that he needs.

The middle child, daughter A███ (12), enjoys spending evenings with Father and her siblings, but also feels the need to return to Mother's home to complete her school work. Both girls enjoy having Mother/daughter time alone when L███ is with Father.

The oldest child, daughter K███ (16), requires the most flexibility because she is involved with the most activities. She has appreciated the way her parents have given her the space to complete her work and activities without pushing her.

At the custody conciliation conference, both girls expressed a clear preference to stay at Mother's home during the school week. Often their

preference is to stay at Mother's on Mondays and Thursdays so they can get their schoolwork done.

This factor does not weigh in favor of either parent, but rather weighs in favor of maintaining the carefully crafted, though unconventional, schedule that is currently in place, which satisfies the best interests of each child.

**(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

Both parents have, unfortunately, engaged in speaking negatively to the children about the other parent. This disparaging conduct is inappropriate by both parents. The children are mature and perceptive enough that this conduct has not turned them away from either parent. The children, instead, love both of their parents and wish they were not put in the middle. The Court finds that the parents' conduct is not intended to turn any of the children away from the other parent; rather, each parent has tried to elevate him/herself in the children's eyes. The children have proven, to date, to be astute enough not to fall into this trap. They each recognize the important role each parent has in their lives.

This factor is neutral.

**(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

Both parents are clearly loving and nurturing with their children. The girls currently rely more on their Mother for emotional support, as one might expect with teenage girls.

This factor is neutral.

**(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

While Father worked as a physician, Mother worked as the CEO of the family. Mother has been the primary caretaker of the children and is the parent most likely to attend to the daily physical, emotional, developmental, educational and special needs of the children. Mother has been the parent to ensure that the needs of each child have been met, and provides stability for the children. She coordinates all their activities, their required appointments, helps them stay organized and balance in the various school work, extracurricular, social and medical commitments they have. Mother ensures that all their schoolwork is done and that home/school communication is maintained. The children are all emotionally close to their Mother and rely on her to maintain this sense of daily consistency. Father is also an involved, loving, doting parent. He attends their activities, participates in school programs and always makes time to engage with the children.

This factor weighs in Mother's favor.

**(11) The proximity of the residences of the parties.**

The parties reside several miles away from one another in Blue Bell. They both reside in the same school district and the children can take the school bus to either parent's home.

This factor is neutral.

**(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

Mother is not currently employed and is available to provide any care needed for the children. Father is a practicing physician with a thriving practice who works long hours. Father does have support from his parents who live over an hour away. Mother has consistently provided backup care for

Father as well when his work schedule prevented him from attending to something the children needed.

This factor weighs in Mother's favor.

***(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.***

The primary source of conflict between the parties, as presented to this Court, has been Mother's concern for the children's safety considering her experience with Father's alcohol use during the marriage and the children's occasional exposure to it. The oldest child has been impacted by Father's past use of alcohol. Because of her exposure to Father's alcohol use and her status as a beginning driver, Mother has cautioned her to be aware of signs of any adult drinking and driving and has empowered her not to risk her own safety by getting in a car with someone who has consumed alcohol. On its face, it might appear that this admonition could foster conflict between Father and daughter, but the Court finds it was an unfortunately necessary, but appropriate, caution to offer to a teenager who is a new driver and has been exposed to alcohol use/abuse. The safety of this teen driver is paramount.

Notwithstanding this issue, the Court finds there is not a high level of conflict between the parties. The Court appreciated Mother's honest assessment of Father's strengths and her own weaknesses as a parent. Both parents have been willing and able to work together and cooperate in relation to issues surrounding the children.

This factor is neutral.

**(14) *The history of drug or alcohol abuse of a party or member of a party's household.***

Mother testified credibly about Father's use and abuse of alcohol during the marriage and the way it impacted the family. She described a number of alcohol related events including a citation for public drunkenness and a 2016 DUI charge. Mother described her credible observations of Father's history of binge drinking and poor decision-making. She described his history of drinking too much, apologizing, ceasing alcohol consumption for a brief period, and then the cycle repeating itself. The parties' oldest child has been exposed to Father's behavior under the influence of alcohol, which has impacted the level of trust in her relationship with her Father.

The Court further finds that Father presented credible testimony indicating his cessation of all alcohol consumption since the event that led to his arrest in the spring on 2016. Although Father failed to submit to hair follicle alcohol testing until ordered by the Court, he exceeded the Court's ordered requirements and submitted test results indicating he has not consumed alcohol since his arrest. The Court finds that Father has, in fact, ceased alcohol consumption.

This factor weighs in Mother's favor.

**(15) *The mental and physical condition of a party or member of a party's household.***

Father underwent an assessment with Spring-Ford Counseling Services in May 2016. The evaluator, Jennifer Gehret, M.S. recommended, "counseling sessions to address positive coping skills for life stressors and the effects of alcohol should be addressed. This counseling may occur with current therapist who Mr. (Dr.) M███████ is seeing for support during his separation or with a counselor who focuses on alcohol intervention services." To date, Father has

not complied with this recommendation. There was no evidence presented to the Court about Mother's mental or physical condition.

This factor weighs in favor of Mother.

**(16) Any other relevant factor(s).**

The Court heard no testimony about the facts of Father's current, open Driving under the influence of alcohol charge. As a result, the Court cannot ascertain whether there is a risk of danger to the children based upon the record. Accordingly, the Court makes a negative inference that if evidence had been presented it would have weighed against Father. Accordingly, this factor weighs in Mother's favor.

The Court ordered both parties to commence co-parenting counseling to address their communication challenge in October 2016. The Court is disappointed in both parties that this has not yet occurred.

In conclusion, the Court finds that the best interests of the three children will be met by awarding Mother primary physical custody and Father a significant schedule of partial physical custody which can be expanded in the summer months. Mother's role in providing stability and consistency, especially during the school year, will best serve the children's needs. The Court further finds that the schedule the parents adopted by agreement is serving the children exceedingly well and should continue. The current schedule is tailored to meet the individual needs of each child and has been effective.

A Custody Order will be entered separately on this date. These Findings of Fact and the Custody Order shall resolve all outstanding petitions between the parties.

BY THE COURT:

RISA VETRI FERMAN, J.

Copies to: /-25-/7
Plaintiff's Attorney: Cheryl L. Young, Esq.
Defendant's Attorney: Andrew Smith, Esq.
Chambers
Court Administration – Family Division
Custody Conciliation

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

J███████ M██████████  :  **NO. 2016-09945**
:
:  **Superior Court No. 745 EDA 2017**
:
**vs.**  :
:
:
:  2016-09945-0052  3/31/2017 3:06 PM  # 11223647
T███ C. M██████  :  Opinion
:  Rcpt#Z3096474  Fee:S0.00
:  Mark Levy - MontCo Prothonotary
:

## OPINION

**FERMAN, J.**                                      **March 31, 2017**

### I. Introduction

Appellant, T███ C. M████████ ("Father"), appeals to the Superior Court of Pennsylvania from this Court's Final Custody Order dated January 25, 2017. On February 27, 2017, Appellant timely filed both the Notice of Appeal and Statement of Matters Complained of on Appeal. On March 6, 2017, the Superior Court of Pennsylvania designated Appellant's appeal as Children's Fast Track Appeal.

On January 25, 2017, following a protracted hearing on January 6, 2017 on Father's Emergency Petition for Custody filed May 20, 2016, this Court issued its "Findings of Fact" and Final Custody Order.[1] The Final Custody Order awarded the parties shared legal custody, with Mother being awarded primary physical custody and Father being awarded partial physical custody during the school year. During the summer months, the Final Custody Order

---

[1] The Final Custody Order was signed January 25, 2017 and filed January 26, 2017. It can be found at docketing sequence forty-one (41). The Findings of Fact were filed January 26, 2017 and can be found at docketing sequence forty-two (42).

awarded the parties shared (50/50) physical custody, which was to be determined by mutual agreement.

## II. Facts and Procedural History

The undersigned directs the Superior Court of Pennsylvania to her "Findings of Fact" filed January 26, 2017 where the *Facts and Procedural History* of this case are detailed.

## III. Issues on Appeal

Overall, Appellant raises eighteen (18) issues in his Statement of Issues Complained of on Appeal.[2] Appellant raises the following issues:

*1. Whether [the] Court erred as a matter of law by failing to apply to Father the presumption that each parent is capable of being the custodial parent.*

*2. Whether [the] Court erred in ruling that factors (1), (4), (10), (12), (14), and (15) each/all weighed in favor of Mother where the weight of the evidence favored Father or favored both parties equally.*

*3. Whether [the] Court erred in ruling Father is only entitled to one overnight per week will all three (3) children at the same time.*

*4. Whether [the] Court erred in allowing the son to stay with Father three (3) nights per week while refusing to grant Father custody of the 2 minor daughters on the same overnights.*

*5. Whether the Court erred in entering an order that grants Father only 1 overnight per week with his daughters thereby creating separation and alienation between the Children.*

*6. Whether Court erred in entering an order where Father never has a weekend with all three (3) Children.*

*7. Whether the Court erred in finding Father is only entitled to four (4) overnights per month with all three of his children.*

---

[2] See Appellant's Statement of Matters Complained of on Appeal filed February 27, 2017 and can be found at docketing sequence forty-four (42).

8. Whether the Court erred in finding Father cannot attend to the daily physical, emotional, developmental, educational and special needs of the children as a physician and surgeon while the Court clearly showed a female bias by stating "Mother worked as the CEO of the family."

9. Whether the Court erred by considering alcohol as playing a part in the marriage and in the raising of the Children.

10. Whether the Court erred in ruling that it is in the best interest of the children to allow the parties' 2 children to commute back and forth at 8 pm at night during the school week because "they feel the need to return to mother's home to complete their school work" clearly showing Mother has alienated the daughters.

11. Whether the Judge erred in finding during the school year Father can only have 1 overnight per week with all three children but during the summer Father has 50 percent custody.

12. Whether the Judge erred in finding Father is completely capable of having the children equally in the summer but cannot attend to their needs during the school year.

13. Whether the Court erred in denying Father's Motion in Limine and instead not only considered Mother's testimony but utilized that testimony as a factor in favor of mother while her testimony was not credible and went against the weight of objective, non-bias evidence and medical testing.

14. Whether the Court erred in ruling on custody when a custody evaluator was not appointed and no custodial evaluation was ever conducted.

15. Whether the Court erred in interviewing the children outside the purview of counsel and asked the Children questions which may have showed favoritism and bias toward Mother.

16. Whether the Court erred in finding Mother has not alienated the children, specifically the daughters when the evidence showed mother told the children the day before a vacation with Father that father had broken the bond of marriage and that father had drinking problems that their eldest daughter should be cognizant of his drinking and should ask Father every time she gets in the car with him.

17. Whether the Court showed a bias to Mother and her counsel by conducting significant conferences in Chambers and allowing Mother's attorney to make continuous statements regarding father's alleged alcohol dependency and alleged infidelity which were evidence including 2 medical expert opinions and hair follicle testing not withstanding witness testimony.

18. *Whether the Court erred in giving mother primary custody where the evidence showed mother has, for almost 8 years, required help at least 1 day per week from Father's mother and another day a week from her own parents to care for the kids, clearly contradicting the Court's biased comment that Mother was somehow a "CEO of the family."*

## IV. Discussion

### A. General Standard of Review

In reviewing a custody order entered by a trial court, the appellate court's scope is of the "broadest type [and the] standard [of review] is [an] abuse of discretion." *McMillen v. McMillen*, 602 A.2d 845, 847 (1992). An abuse of discretion only "occurs if, in reaching its conclusion, [the] trial court overrides or misapplies the law or exercises judgment that is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." *Gates v. Gates*, 967 A.2d 1024, 1028 (Pa.Super.2009).

The appellate court "must accept findings of the trial court that are supported by competent evidence of record." *McMillen* at 847. The role of the appellate court "does not include making independent factual determinations." *Id.* As it pertains to issues of credibility and the weight of the evidence, the appellate court "must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand." *Johns v. Cioci*, 865 A.2d 931, 936 (Pa. Super. 2004) (internal citations omitted). Moreover, the appellate court may reject the trial court's conclusions "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005).

As with all child custody cases, the "paramount concern is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *C.W. v.*

*K.A.W.*, 774 A.2d 745, 748 (Pa. Super. Ct. 2001) (quoting, *E.A.L. v. L.J.W.*, 662 A.2d 1109 (1995)).

In determining the best interest of the child, the court shall consider all relevant factors including the sixteen custody factors set forth at Section 5328(a). The Custody Act requires the court to "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. §5323(d).

Lastly, it is within the "trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. Ct. 2013). The parties cannot dictate the amount of weight the trial court places on evidence. *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super.2002)(quoting *Robinson v. Robinson*, 645 A.2d 836, 838 (1994)).

This Court's findings, generally, should be given the appropriate amount of deference, and this Court's Custody Order should be affirmed. Following is this Court analysis regarding the specific issues raised by Father in his Statement of Matters Complained of on Appeal.

## B. **Presumption in Favor of Father**

In his Statement of Matters Complained of on Appeal, at Issue One (1), Father asserts that this Court abused its discretion by failing to apply to Father a presumption that each parent is capable of being the custodial parent. Father's assertion here fails, as this Court, under the law, is unable to apply any presumptions in favor of either parent.

"In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent." 23 Pa.C.S.A. § 5327. Additionally, "In making a determination under subsection (a), no party shall receive preference based

upon gender in any award granted under this chapter. 23 Pa.C.S.A. § 5328(b). Moreover, "the Custody Law does not countenance presumptions between parents based upon gender or any other characteristics." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. Ct. 2016), reargument denied (July 28, 2016), appeal denied, 330 WAL 2016, 2016 WL 6462545 (Pa. Nov. 1, 2016).

Accordingly, based upon the evidence of record, this Court did not abuse its discretion.

## C. **Weight of the Evidence and the Application of the Custody Factors**

Father raises three (3) issues in his Statement of Matters Complained of on Appeal regarding this Court's weighing of the evidence and its application of the custody factors. Those issues are raised in Father's Statement of Matters Complained of on Appeal at Issue Number Two (2), Number Sixteen (16), and Number Eighteen (18). All of which will be discussed by this Court collectively in this section.

First, Father asserts at Issue Number Two (2) in his Statement of Matters Complained of on Appeal that this Court abused its discretion by ruling factors one (1), four (4), ten (10), twelve (12), fourteen (14), and fifteen (15) in favor of Mother where the weight of the evidence either favored Father or both parties equally. Father's assertion here fails, as this Court, as the finder of fact, has the sole discretion to determine the amount of weight to place on specific pieces of evidence and to determine which factors are critical to the best interest of the child in each particular case.

Pursuant to 23 Pa.C.S.A. § 5328(a), when ordering any form of custody, "the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child..." The parties are unable to dictate the amount of weight the trial court places on evidence. That is within the "sole discretion of the trial

court as the finder of fact, whose paramount concern is the best interest of the [children]." *S.M. v. J.M.*, 811 A.2d 621, 623 (2002). As the Superior Court stated in *M.J.M. v. M.L.G.*, "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (2013).

Furthermore, the appellate court "must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand." *Johns v. Cioci*, 865 A.2d 931, 936 (Pa. Super. 2004)(internal citations omitted). The appellate court may reject the trial court's conclusions "only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005).

Here, this Court's conclusions were not an error of law or unreasonable based upon the evidence of record. As a result, this Court did not abuse its discretion in weighing factors one (1), four (4), ten (10), twelve (12), fourteen (14), and fifteen (15) in favor of Mother. This Court, sitting as finder of fact, made determinations of credibility and weighed the evidence presented throughout the custody trial. Based upon the evidence of record, this Court determined that factors one, four, ten, twelve, fourteen, and fifteen-favored Mother.[3]

Second, Father asserts at Issue Number Sixteen (16) in his Statement of Matters Complained of on Appeal that this Court abused its discretion by failing to conclude that Mother alienated the children when the evidence, according to Father, showed that Mother told the children that Father had broken the bonds of marriage and that Father had drinking problems that the eldest daughter should be aware of and should ask Father about every time she gets in the car with him.

---

[3] This Court's application of the custody factors to this case can be found in its Findings of Fact filed January 26, 2017.

This Court, as the finder of fact, in its sole discretion, found no evidence that Mother alienated the children from Father. In fact, while this Court found evidence that both parents attempted to turn the children against the other parent, neither of their attempts to turn the children against the other were successful. In its Findings of Fact filed January 26, 2017, this Court found that both parents "engaged in speaking negatively to the children about the other parent."[4] Moreover, this Court found that, "The children are mature and perceptive enough that this conduct has not turned them away from either parent."[5]

As previously stated above, it is the sole discretion of the trial court as the finder of fact to determine the amount of weight to place on evidence and to determine which factors are critical to the best interest of the children as issue. As a result, based upon the evidence of record, this Court did not abuse its discretion in failing to conclude that Mother alienated the children.

Third, Father asserts at Issue Number Eighteen (18) in his Statement of Matters Complained of on Appeal that this Court abused its discretion in awarding Mother primary custody where the evidence showed Mother has, for almost eight (8) years, required help at least one (1) day per week from Father's mother and another day a week from her own parents to care for the children. Father's assertion here fails.

Here, this Court conducted a detailed analysis of the custody factors and concluded that it was in the best interest of the children to award Mother primary physical custody during the school year. In its Findings of Fact, this Court found based upon the evidence of record that Mother and Father are both loving and capable parents, but that the majority of household duties had always been, and currently were still, performed by Mother. This Court concluded that the children relied on Mother pre-separation and currently to

---

[4] See factor 8 of this Court's Findings of Fact dated January 26, 2017.
[5] *Id.*

manage their affairs, and that the children were emotionally close to Mother and relied on her to maintain a sense of daily consistency. This Court also found that Father is a loving and doting parent, who is fully capable of performing all the required parental duties, and that he makes the children a priority in his life despite his schedule and the demands of his profession life. This Court also found that the children have a very strong preference towards spending more time in Mother's household during the school year in order to provide them with consistency and stability, especially in their academic pursuits.

The custody factors are not a mathematically equation. In reaching conclusions about the applicability of the custody factor, this Court is not mandated to calculate the number of factors that might favor each parent and make a mathematical determination of which parent earned more factors to fashion an award of custody. Rather, the Court makes a holistic analysis of the familial situation and strives to fashion a custody award that is in the best interest of the children. Father is not entitled to select or mandate how the Court analyses and weighs the various factors. This Court did not ignore the fact that Mother receives help from others occasionally. This Court simply did not weigh that fact as heavily as Father insists it should have been weighed.

As stated previously, it is within the sole discretion of this court, sitting as fact finder whose paramount concern is the best interest of the children, to determine the amount of weight to place on evidence. As a result, based upon the evidence of record, this Court did not abuse its discretion.

### D. Children's Preference

Father assets at Issues Three (3), Four (4), Five (5), Six (6), Seven (7), Ten (10), Eleven (11), and Twelve (12) in his Statement of Matters Complained of on Appeal that this Court abused its discretion in giving significant weight to the

children's preferences. Father's assertion here fails as well. This Court did not abuse its discretion in giving significant weight to the children's preference.

"Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest." *McMillen v. McMillen,* 602 A.2d 845, 847 (1992) (internal citations omitted). The trial court, as the finder of fact, can best determine the weight to be given to a child's testimony as to their preference. *Id.* "The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference." *Wheeler v. Mazur,* 793 A.2d 929, 937-38 (Pa. Super. 2002)(internal citations omitted). As the child grows older, more weight must be given to the child's preference. *Id.* Where both parents are equally loving and capable, the custodial preferences of the child or children may "tip the evidence scale." *McMillen,* 602 A.2d at 848.

All three children, who ranged from ages ten (10) to sixteen (16), were interviewed by this Court separately on the record. Collectively, the children presented as thoughtful, kind, mature, and compassionate individuals. The children were intelligent, articulate and well-reasoned in their thinking, and possessed a clear ability to articulate their thoughts and wishes. All three children expressed what type of schedule best suited their personal needs without a bias toward or against either parent. It was clear to this Court that the children loved both of their parents, and that both parents were equally loving and capable.[6]

Although this Court would have preferred a custody order that provided a more conventional custody schedule where the children are all together during a parent's custodial time, this Court concluded, after interviewing the

---

[6] For a more detailed analysis of the children's preference, the Superior Court is directed to Factor Seven (7) of this Court's Findings of Fact filed January 26, 2017.

children, that this unconventional schedule, in which each child has a slightly different schedule, was the schedule that the children prefer and that most effectively satisfied the best interest of each child individually.

As stated in *In re Russo,* the general rule "must yield to the paramount principle that the best interests of each individual child must be the determining factor." *In re Russo,* 346 A.2d 355, 357 (Pa. Super. 1975). Here, this Court concluded that in this case, with these children, the best interest of the children was not served by the general rule and that there was no evidence that the children's separation has caused alienation of each other or either parent. As a result, this Court did not abuse its discretion in creating an unconventional schedule in accordance with the preference of each individual child.

## E. Evidentiary Issues

Father raises three (3) issues in his Statement of Matters Complained of on Appeal that are evidentiary based, and will be discussed by this Court holistically under this subsection. Those issues are raised in Father's Statement of Matters Complained of on Appeal at Issues Thirteen (13), Fourteen (14), and Fifteen (15).

First, at Issue Number Thirteen (13) in his Statement of Matters Complained of on Appeal, Father asserts that this Court abused its discretion by denying his *Motion in Limine* and instead not only considered Mother's testimony but utilized her testimony as a factor in favor of Mother while her testimony was not credible and went against the weight of objective, non-biased evidence and medical testing. Father's assertion here fails, as this Court did not abuse its discretion in deferring its evidentiary rulings until trial as objections arose.

A *Motion in Limine* is a "procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered." *Com. Johnson*, 582 A.2d 336, 337 (Pa. Super.1990), affirmed, 626 A.2d 514 (1993). A *Motion in Limine* may "preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion." *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1232 (Pa. Super. 2011). On the other hand, "if the trial court defers ruling on a motion in limine until trial, the party that brought the motion must renew the objection at trial or the issue will be deemed waived on appeal." *Id.* The admissibility of evidence is "vested in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Com. v. Brown*, 839 A.2d 433, 435 (Pa. Super. 2003)(internal citations omitted.) An abuse of discretion occurs when a trial court, "in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Id.*

Here, on January 4, 2017, Father filed a pre-trial statement pursuant to this Court's scheduling order. In his pre-trial statement, Father notified this Court and opposing counsel that he would be motioning this Court for the preclusion of certain evidence prior to the start of trial. Father sought to preclude: (1) the testimony of Hollie Boizman and Priscilla Singleton; and (2), evidence pursuant to Rules 104(a), 403, 404, 405, 410 (and 42 Pa.C.S.A. § 6142), 602, 702, and 706.

Prior to trial, Mother notified the Court and counsel that she would not call Hollie Boizman and/or Priscilla Singleton as witnesses, resolving those evidentiary issues Father raised in his pre-trial statement regarding those witnesses.[7] This Court is unable to respond to specifics as Father failed to raise the specific evidentiary issues in which this Court abused its discretion. However, all other evidentiary issues raised by Father in his pre-trial statement

---

[7] See Notes of Testimony from January 6, 2017 at pages 4-5.

were not handled preliminary, but were deferred by this Court and ruled upon as the evidentiary issues arose during trial upon Father's objection.

For example, Father's counsel objected to the relevance of Mother's counsel's question on cross-examination pertaining to whether Father's employer knew about his pending DUI charge.[8] This Court overruled Father's counsel's objection stating, "You questioned him extensively about whether or not he's been disciplined or whether consequences have been imposed at work, and I think that's a fair cross-examination question based upon the questions you've asked." (N.T. 1/6/17 pages 31-31). Accordingly, this Court did not abuse its discretion in deferring its ruling on Father's *Motion in Limine* until trial.

Second, at Issue Number Fourteen (14) in his Statement of Matters Complained of on Appeal, Father asserts that this Court abused its discretion in ruling on custody when a custody evaluator was not appointed and no custodial evaluation was ever conducted.

Pursuant to Pa.R.C.P. No. 1915.8, "The court *may* order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate experts or experts. The order, which shall be substantially in the form set forth in Rule 1915.18, may be made upon the court's own motion, upon the motion of a party with reasonable notice to the person to be examined, or by agreement of the parties."

Here, neither party filed a motion requesting the Court to appoint a custody evaluator nor was there an agreement between the parties to appoint an evaluator, and the Court found no basis to raise the issue sua sponte. With no custody evaluator involved in the case, the Court was required to make a custody determination based upon the evidence presented of record and the Court's analysis of the best interests of the children with consideration of the

---

[8] See page 31 of the Notes of Testimony from January 6, 2017.

statutory custody factors. Accordingly, this Court did not abuse its discretion in ruling on custody without a custody evaluation.

Third, at Issue Number Fifteen (15) in his Statement of Matters Complained of on Appeal, Father asserts that this Court abused its discretion in interviewing the children outside the purview of counsel and asked the children questions which may have showed favoritism and bias towards Mother.

This Court interviewed the children outside the presence of counsel only after counsel for both Mother and Father waived their presence on the record. (N.T. 1/6/17 page 150). Furthermore, a careful review of the record will demonstrate that this Court's questions were balanced and neutral, and void of any evidence of favoritism and/or bias towards Mother.[9] As a result, Father's assertion here fails. This Court did not abuse its discretion.

## F. Bias Towards Mother

Twice, Father asserts in his Statement of Matters Complained of on Appeal, at Issue Number Eight (8) and Seventeen (17), that this Court demonstrated a bias towards Mother in various ways.

First, at Issue Number Eight (8) in his Statement of Matters Complained of on Appeal, Father asserts that this Court abused its discretion in finding that Father cannot attend to the daily physical, emotional, developmental, educational and special needs of the children as a physician and surgeon while showing a clear female bias towards Mother by describing Mother as the CEO of the family in its Findings of Fact. The Court's used the phrase "CEO" to characterize Mother's role and responsibility for managing the family's affairs while Father was, based upon the evidence, managing his medical business.

---

[9] The children's interviews have be sealed by this Court and have been sent to the Superior Court for review.

The record is completely devoid of any favoritism displayed by the Court for Mother or the female gender. Father's assertion, accordingly, should fail.

"One substantial factor in determining if a modification of a custody order is in the child's best interest, although not the sole factor, is the role that one parent has assumed as the primary caretaker of the child." *Johns v. Cioci,* 865 A.2d 931, 937 (Pa. Super. 2004)(internal citations omitted). Here, this Court, based upon the evidence of record, found that Mother has been the children's primary caretaker. This Court found that Mother is more likely to attend to those needs because "she coordinates all their activities, their required appointments, helps them stay organized and balance in the various school work, extracurricular, social and medical commitments they have."[10] This Court found that the children are emotionally close to their Mother and rely on her to maintain this sense of daily consistency.

However, this Court did not find that Father cannot attend to the daily physical, emotional, developmental, educational, and special needs of the children. In fact, in its Findings of Fact, at factor ten (10), this Court stated, "Father is also an involved, loving, doting parent. He attends their activities, participates in school programs and always makes time to engage with the children."[11] Additionally, as stated in this Court's Findings of Fact at factor three (3), "Father makes the children a priority in his life."

Father's assertion of bias must be demonstrated by the evidence of record. Here, the record is void of any evidence of bias. This Court's use of the term CEO does not establish or demonstrate a bias towards Mother, or her gender, as Father asserts. The term CEO simply describes Mother's role in the household, which was credibly testified to by Mother, Father, and children. Following this Court's use of the term, it listed Mother's household

---

[10] *Id.*
[11] Findings of Fact dated January 26, 2017.

responsibilities, such as coordinating all their activities, assignments and appointments.

Second, Father asserts, at Issue Number Seventeen (17) in his Statement of Matters Complained of on Appeal, that this Court showed a bias towards Mother and her counsel by conducting significant conferences in chambers and allowing Mother's attorney to make continuous statements regarding Father's alleged alcohol dependency and alleged infidelity which were unsupported by any credible evidence, and to the contrary, were against the weight of the evidence including two medical expert opinions and hair follicle testing not withstanding witness testimony.

This Court notes that both parties requested "off the record" conferences in chambers. None of the statements made by either counsel during the off the record conferences were made a part of the record or used by this Court in its determination of what was in the best interest of the children. This Court's award of custody was based solely on the evidence of record.

Father's claim that his alcohol dependency and infidelity were unsupported by any credible evidence is unsubstantiated by the evidence of record. At trial, both Father and Mother testified regarding incidents where Father drank to excess in several public situations. The Court found that Father minimized all the incidents where he drank to excess. He argued these were isolated incidents that did not reflect a problem with alcohol. In addition, Mother testified about other non-public incidents where Father drank to excess.

Mother testified credibly to her observations of Father's history of binge drinking and poor decision-making. Mother described Father's history of drinking too much as a consistent cycle which typically began with a building up period, a crisis event, an apology, a promise to refrain from alcohol consumption, a period of time where Father in fact refrained from consumption

and then the entire cycle repeating itself. One of the parties' daughters also testified credibly to her exposure to Father's history of alcohol use during the marriage and its impact on the family. This evidence was important to the Court's analysis of the children's best interests.

As it pertains to Father's infidelity, Mother's counsel attempted to question Father about the specifics of his infidelity. This Court ruled, however, that the evidence was not relevant and denied its admission on the record.

Lastly, pertaining to this Court's bias towards Mother, the record is void of any evidence of bias towards Mother. This Court's custody determination is based solely upon the evidence of record. Accordingly, based upon the evidence of record, this Court did not abuse its discretion.

## G. **Father's Alcohol Use**

Father asserts, at Issue Number Nine (9) in his Statement of Matters Complained of on Appeal that this Court abused its discretion by considering alcohol as playing a part in the marriage and in the raising of the children.

Pursuant to 23 Pa.C.S.A. § 5328(a)(14), this Court is required to consider the history of drug and/or alcohol abuse of a party or member of a party's household in determining the best interest of a child or children. In all custody cases, alcohol abuse must be considered by the Court in determining what is in the best interest of the children. As discussed above, the Court found credible, compelling evidence of Father's alcohol abuse, Father's history of binge drinking and poor decision-making as a result. The Court appropriately considered this evidence in its review of the custody factors. Accordingly, based upon the evidence of record, this Court did not abuse its discretion.

## V. **Conclusion**

Based on the foregoing reasons, this Court's Custody Order dated January 25, 2017 should be **AFFIRMED**.

BY THE COURT:

_____

RISA VETRI FERMAN, J.

Copies of Opinion sent to:
Plaintiff's Attorney: Cheryl L. Young, Esq.
Defendant's Attorney: Andrew Smith, Esq.
Chambers
Court Administration – Family Division
Superior Court of Pennsylvania