J-S05028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.M. | : | |
| | : | |
| Appellant | : | No. 1341 WDA 2018 |

Appeal from the Order Entered August 23, 2018
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD No. 18-007222

BEFORE:   PANELLA, P.J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 17, 2019**

J.M. (Mother) appeals from the order denying her petition to relocate and granting the petition for shared physical custody filed by J.M. (Father) regarding the parties' two minor daughters, M.G.M., born in July 2009, and C.B.M., born in October 2012 (collectively, Children).  We affirm.

The trial court summarized the relevant facts of this case as follows:

The parties married in 2004 and are the parents of two girls, aged [six] and [nine].  During the marriage, the parties moved to the Pine-Richland school district, based on their mutual desire for Children to attend school there.  They built a home which, at the time of trial, was on the market for over [one] million dollars. Father, who works for a financial services firm, has a net income of approximately $20,000.00 per month.  Mother, who earned $50,000.00 to $80,000.00 in the beginning of the marriage, became, by mutual decision, a stay-at-home parent after the birth of the eldest child in 2009 and has not reentered the workforce.

---

[*] Retired Senior Judge assigned to the Superior Court.

Mother testified the parties planned for her to return to the workforce in some capacity after the Children were in school.

The parties' marriage deteriorated over time and Father moved out of the marital residence on January 1, 2018. Mother retained primary custody of Children after separation with Father exercising partial custody every other weekend and a weeknight dinner. Father filed a divorce complaint on January 31 and filed for shared custody on February 1, 2018. Mother filed a Notice of Relocation on February 9, 2018, proposing to move to Mercer County with Children. Mother's stated motivation for relocation was to move to a more affordable area with lower taxes and to be closer to her parents. Father objected to the relocation, asserting the move would negatively impact his relationship with Children who would receive no benefit from the move.

At trial, Mother claimed that Father was not capable of sharing custody due to his work and travel schedule. To support this position, Mother submitted a calendar, purportedly showing the days during the parties' six months of separation when Father requested changes in the limited custody he was exercising. She portrayed Father as an absent parent, rarely available for his children, stating, "The girls very much view that they live with me and they spend time with their dad."

After two days of trial, [the trial court] found that Mother's requested relocation was not in the best interest of Children who would derive little benefit from it. [The trial court] found that it was in their best interest for their parents to share custody as equally as possible.

In making [its] decision, [the trial court] performed an analysis of the custody factors of 23 Pa.C.S. § 5328 and the relocation factors of § 5337. Because the Children needed to be enrolled and begin school before [the court] could prepare a written Order, [the court set forth its] factor analysis on the record, touching on those [it] found most compelling. [The court] then set forth a shared custody schedule in [the] August 22, 2018 Order.

Trial Ct. Op., 11/1/18, at 1-4 (record citations and some capitalization omitted).

On September 19, 2018, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On November 1, 2018, the trial court issued a Rule 1925(a) opinion. The court concluded that the "custody factors resulted in an almost neutral balance between the parties, but the relocation [factors] heavily favored Father due to the lack of feasibility of preserving his relationship with the Children going forward." Trial Ct. Op. at 8.

On appeal, Mother raises eight issues for our review, which we have reordered as follows:

1. The trial court erred in failing to consider all sixteen custody factors set forth in 23 Pa.C.S. § 5328 and all nine relocation factors set forth in 23 Pa.C.S. § 5337 in its opinion.

2. The trial court contradicted itself during the trial and in its findings, stating that Father could not handle shared custody, then stating that shared custody did not need to be equal, but then eventually ordering a shared custody schedule. The totality of the circumstances exemplifies the abuse of discretion of the court and the bias against Mother.

3. The trial court erred in finding that [C]hildren would receive no benefit from Mother's proposed relocation to Mercer County, despite the evidence of the superior affordability, the fact that Mother and extended family would be available to care for [C]hildren on a daily basis rather than placing [C]hildren in a commercial facility, and the proximity to and emotional support of family.

4. The trial court erred in finding that the benefit of the relocation to Mother would be minimal, despite the evidence of superior affordability of Mercer County, the ability to stay at home to care for [C]hildren or seek more flexible employment, and the emotional and practical support of close family and friends that is not available to Mother in Pine Township.

- 3 -

5. The trial court erred in that it did not consider the inability of Father to follow a shared custody schedule due to his work and travel schedule and the impact on [C]hildren of having to change their schedule to accommodate Father's needs.

6. The trial court erred in that it failed to find that it is in the best interest of [C]hildren to remain in Mother's primary custody and for [C]hildren to be in the same school.

7. The trial court deprived Mother of her constitutional right to move, even though the marital residence is for sale and Father has no other ties to Pine Township, Father acknowledged that he could reside in Mercer County, and Father himself submitted evidence that he suggested Mother should purchase a house in Butler County.

8. The trial court erred in showing bias against Mother as a stay-at-home parent, with the judge interjecting her opinion regarding her own custody issues and parenting choices and criticizing Mother for choosing to care for [C]hildren full time and not pursuing a career.

Mother's Brief at 14.

In her first issue, Mother claims that the trial court abused its discretion by failing to consider the required relocation and custody factors. Mother's Brief at 55. Mother asserts that the court's on-the-record analysis "did not always identify which factor, if any, it was addressing." *Id.* at 35. Mother specifically asserts that the trial court failed to mention custody factors one, three, four, eight, nine, and ten and relocation factors one, five, and eight.[1] *See* Mother's Brief at 35-43.

---

[1] Mother, in support of her first issue, also contends that the trial court's consideration of several of the factors was inadequate. We address that contention below.

- 4 -

In custody cases under the Child Custody Act (the Act) 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. ***See*** 23 Pa.C.S. §§ 5328, 5337. When making a decision on relocation that also involves custody, "the trial court must consider all ten relocation factors and all sixteen custody factors" outlined in the Act. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 836 (Pa. Super. 2013).

In awarding custody, the determination of a child's best interests requires the examination of the following factors:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

With respect to relocation, the court must consider the following factors:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

This Court has explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013) . . . . Section 5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013) . . . . A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014).

As we stated in *M.J.M.*:

It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

*M.J.M.,* 63 A.3d at 339 (emphasis added).

Here, the trial court articulated the reasons for its custody and relocation decision on the record in open court.[2] *See* N.T. Trial, 8/20/18, at 404-17. Although the court did not always identify which factor it was evaluating, our review of the record reveals no merit to Mother's contention that the court failed to consider all relevant factors. *See* N.T. Trial, 8/20/18, at 404-17.

With regard to custody, for example, the first factor required the trial court to consider which party is more likely to encourage and permit frequent and continuing contact between Children and the other party. *See* 23 Pa.C.S. § 5328(a)(1). The court suggested that this factor was balanced equally between the parties, and stated "if you guys were to calm down here . . . you both are smart enough to see what the kids need." N.T. Trial, 8/20/18, at 411.

The third custody factor required the trial court to consider the parental duties performed by each party on behalf of Children. *See* 23 Pa.C.S. § 5328(a)(3). The court acknowledged that Mother was a stay-at-home mom and was "kind of running everything with the kids." N.T. Trial, 8/20/18, at 412. However, the court stated that "[Mother's] definition of being a good parent is a lot different than [Father's,]" and concluded that the contributions

_____

[2] In its Rule 1925(a) opinion, the court referred to its on-the-record analysis and explained that "[b]ecause the Children needed to be enrolled and begin school before I could prepare a written order, I stated my factor analysis on the record, touching on those I found most compelling." *See* Trial Ct. Op. at 4.

made by Mother and Father were equally important. *Id.* at 413; *see also* Trial Ct. Op. at 12.

The fourth custody factor is "[t]he need for stability and continuity in the child's education, family life, and community life." 23 Pa.C.S. § 5328(a)(4). The court found that Mother's and Father's residences were close enough for them to maintain shared custody and suggested that maintaining Children's "normal interaction with their father" was important. N.T. Trial, 8/20/18, at 415, 408.

The eighth custody factor related to the attempts of a parent to turn Children against the other parent. *See* 23 Pa.C.S. § 5323(a)(8). The court found that this factor weighed equally between the parties, indicating that both Mother and Father claimed that the other "says things to the kids and blames things on [the other]." N.T. Trial, 8/20/18, at 414. The court noted that both parties shared responsibility for the ongoing conflict, because they "created this situation together." *Id.* at 415.

The ninth custody factor required the trial court to consider which party was more likely to maintain a loving, stable, consistent and nurturing relationship with [Children] adequate for the child's emotional needs." 23 Pa.C.S. § 5328(a)(9). The court found that these factors balanced equally and explained that "I think both of you are very, very good in a loving, stable, nurturing relationship . . . I think both of you are able to be very attentive." *See* N.T. Trial, 8/20/18, at 415.

The tenth custody factor related to which party was more likely to attend to the "daily physical, emotional, developmental, educational and special needs" of Children. 23 Pa.C.S. § 5328(a)(10). The trial court made clear that both parties were equally capable of caring for Children and addressing their specific needs. **See** N.T. Trial, 8/20/18, at 407, 411, 413.

As to relocation, the first relocation factor related to the nature, quality, extent of involvement, and duration of Children's relationship with Mother and with Father, siblings, and other significant persons in Children's life. **See** 23 Pa.C.S. § 5337(h)(1). Here, the trial court noted that Children have two sets of grandparents and that their paternal grandparents live closer to Children's current residence. **See** N.T. Trial, 8/20/18, at 408. However, the court emphasized that its primary focus was on Children's relationship with Mother and Father and not on Children's relationship with their grandparents. **Id.** The court explained that this factor was not determinative of its decision to deny Mother's petition to relocate. **Id.**

The fifth relocation factor required the trial court to consider whether there was an established pattern of conduct of either party to promote or thwart the relationship of Children and other party. **See** 23 Pa.C.S. § 5337(h)(5). On this factor, the trial court noted:

> I don't think there's been an established pattern. . . . I don't think either one of you has really purposely done stuff. You might have been aggravated about the truth of the matter and said something smart or offhanded in front of the other person[,] in front of the kids. And sometimes it's easier to do that when you believe you're saying the truth, you know.

N.T. Trial, 8/20/18, at 409-10.

Relocation factor eight required the trial court to consider the reasons and motivation of each party for seeking or opposing the relocation. *See* 23 Pa.C.S. § 5337(h)(8). Here, the trial court stated:

> I don't doubt that relocation would help you if you moved on some level, but I think it would hurt [Children] really badly. I think it would set a standard in their life that they've never had. They've never lived in that place. They're going to be in school all day. I don't see any financial benefit. I don't necessarily see the emotional benefit or the educational benefit. I don't think we meet the mark on that relocation.
>
> I don't think your reason for thinking you want to do that is evildoing to hurt [Father]. I don't believe that. I just think, you know, it would be more comfortable for you and that would be a good thing for the kids. It's just the other aspects of it aren't so much there.

N.T. Trial, 8/20/18, at 411.

Therefore, the record belies Mother's assertion that the trial court failed to consider any specific custody or relocation factor. *See A.V.*, 87 A.3d at 822-23; *M.J.M.*, 63 A.3d at 336. Accordingly, Mother's argument merits no relief.

Mother also argues that "[t]he factors that were identified [by the trial court] were given nothing more than a cursory mention, with no analysis of the evidence, a discussion of the evidence presented, or the reasoning behind the court's decision." Mother's Brief at 35-36. Mother contends that "the court's analysis of both sets of factors must make reference to the record; addressing the factors in a cursory or conclusory manner is not sufficient,"

and the "court must state both its conclusions and reasoning on the record."

***Id.*** at 35.

Mother's challenge to the thoroughness of the trial court's discussion of the relevant factors fails to establish an abuse of discretion. As stated above, there is no required amount of detail for the trial court's explanation so long as the enumerated factors are considered. ***See M.J.M.***, 63 A.3d at 336; ***see also A.V.***, 87 A.3d at 822-23. Contrary to Mother's arguments, our review reveals that the court properly considered all relevant custody and relocation factors, its factual findings were supported by the record, and its conclusions were reasonable. ***See C.R.F.***, 45 A.3d at 443. Accordingly, Mother's first issue fails.

In her second issue, Mother argues that the trial court "contradicted itself" by stating that shared custody did not need to be equal, but then ordering a shared custody agreement. Mother's Brief at 50. By way of further background to this claim, at trial, the court considered the feasibility of preserving Father's relationship with Children if Mother's relocation petition were granted. ***See*** N.T. Trial, 8/20/18, at 408-09 (discussing 23 Pa.C.S. § 5337(h)(3)). The court, in reaching its decision to deny relocation, suggested:

> I do not agree [with Father] that, you know, the sandcastle washes away if [Mother relocates]. I think kids, if they're -- I don't think you [referring to Father] have to have exactly 50/50. I don't think that means they love you as much as they love her. In the old days[,] guys would get one weekend a month. Kids love their parents.
>
> They don't care if they see you every single day. The problem I have with maintaining this relationship is as this gets older and

- 13 -

they go live with their dad every weekend, what does that translate into for them?

I go to school here. I have no life. I have no friends. You're going to have a 13-year-old girl, and all her friends are doing something, and she's not here ever. It doesn't work well. It's a bad plan.

[C]hildren's preference is that you guys stop fighting and that you pay more attention to them. So that wasn't a part of it.

*Id.*

In its Rule 1925(a) opinion, the trial court explained the reasons for ordering shared custody:

I carefully considered all of the testimony and evidence presented regarding Father's schedule. I found credible Father's testimony that the majority of the travel which interfered with his past custody time was scheduled prior to separation. I found Father credible when he testified he controls his schedule and can make his travel arrangements and his appointments so that they do not interfere with his custody going forward.

Mother portrayed Father as unavailable, always working or playing golf rather than spending time with Children. I did not find this picture of Father accurate. Clearly, Father has a demanding job and he travels for work, as do many other quite involved parents. This is not a reason to find shared custody impossible. In this case, Father credibly testified as to how he would manage his schedule going forward to minimize travel or long days when he exercises custody.

Mother's testimony that Father traveled more since separation was belied by the facts. Father introduced evidence that his overnight travel of 20 to 40 nights a year had remained relatively constant during the marriage and after. The calendar Mother proffered to show Father's inability to exercise custody was not probative of how Father would manage his schedule going forward.

Trial Ct. Op. at 11.

- 14 -

On appeal, Mother emphasizes the trial court's statements that "I don't think you have to have exactly 50/50" and that Children "don't care if they see you every day" was inconsistent with its decision to award shared custody. Mother's Brief at 37.

Based on our review of the record, we find no abuse of discretion in the trial court's conclusion that both parties were equally capable of shared custody. *See C.R.F.* 45 A.3d at 443. The court's factual findings are supported by the record and its conclusions are reasonable in light of the evidence presented at the hearing. *See id.* Further, the record demonstrates that the trial court did not contradict itself. The court's statement that shared custody did not have to be exactly equal was made in the context of discussing the feasibility of Mother's relocation petition and not Father's petition for shared custody. Therefore, no relief is due on this claim.

We summarize Mother's next five issues as follows. Mother contends that the trial court abused its discretion by finding that Children would receive no benefit from the proposed relocation. Mother's Brief at 44. She also asserts that the court erred by failing to consider the benefits of permitting Mother to live in a more affordable community with her family. *Id.* at 44-45. According to Mother, the benefits would include permitting her to spend more time caring for Children, avoiding the need for commercial day care, permitting Children to go to the same school, and providing greater continuity in Children's lives. *Id.* Mother also asserts that the trial court failed to consider Father's long and irregular working hours when awarding shared

custody and placed Father's interests over those of Mother and Children. ***Id.*** at 48-49. Mother argues that the trial court erred in failing to find it was in Children's best interests to permit her to relocate and have primary custody. ***Id.*** at 50. Mother also asserts that she was deprived of the constitutional right to move her residence by the court despite the fact that Father previously suggested that she could move. ***Id.*** at 51.

Mother, in essence, questions the trial court's conclusions and assessments and seeks to have this Court re-find facts, re-weigh evidence, and re-assess credibility to her view of the evidence. This we cannot do. ***See C.R.F.***, 45 A.3d at 443. As we stated in ***King v. King***, 889 A.2d 630 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion . . . ." ***Id.*** at 632 (quoting ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa. Super. 2005)).

In her eighth issue, Mother argues that the trial court was biased against her as a stay-at-home parent. Mother's Brief at 46. According to Mother, the trial court made several statements that trivialized her work as a stay-at-home mother. ***Id.*** at 47-48. Mother asserts that "[i]n focusing on what the court believes to be [Mother's] shortcomings regarding her marriage and career, the court ignored an analysis of the custody factors and the best interest of the children." ***Id.*** at 48. Mother claims that "[t]he totality of the

circumstances exemplifies the abuse of discretion of the court and the bias against Mother." *Id.* at 50.

As indicated previously, the record demonstrates that the trial court properly based its decision on the evidence of record, and that the court considered the evidence in light of the factors set forth in Sections 5328(a) and 5337. *See A.M.S.*, 70 A.3d at 836; *C.R.F.*, 45 A.3d at 443. There is no indication that the court's decision was based on bias against Mother as a stay-at-home parent. *See Arnold v. Arnold*, 847 A.2d 674, 681 (Pa. Super. 2004) (stating that adverse rulings alone do not establish bias, especially where rulings are legally proper). *Cf. Wiskoski v. Wiskoski*, 629 A.2d 996 (Pa. Super. 1993) (finding pervasive bias against the mother in a custody dispute where the trial court ignored evidence presented at the hearing and relied on findings unsupported by the record). Therefore, no relief is due.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/17/2019

- 17 -