J-A28037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.H.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.L.C.C. | : | No. 1821 EDA 2019 |

Appeal from the Order Entered May 31, 2019
in the Court of Common Pleas of Montgomery County Domestic Relations
at No(s): No. 2010-14041

BEFORE: PANELLA, P.J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED FEBRUARY 04, 2020**

Appellant, R.H.B. ("Father"), files this appeal from the order dated and entered May 31, 2019, in the Montgomery County Court of Common Pleas, with regard to custody of his child with B.L.C.C. ("Mother"), daughter E.G.C.B., born in December 2009 ("Child"). The order maintained shared legal custody and awarded resumption of shared physical custody on a week-to-week basis with exchanges on Fridays after school or at 5:00 p.m., as initially set forth in the Agreed Custody Order of August 1, 2013, and confirmed by Order of September 22, 2016. After review, we affirm the trial court's order.

The trial court summarized the procedural and factual history as follows:

> The case commenced on May 27, 2010, with Father's Complaint for Custody. The [c]ourt entered an Interim Agreed Order of Custody on January 3, 2012, which provided that the parties with [*sic*] shared legal custody and Mother had primary

---

[*] Former Justice specially assigned to the Superior Court.

physical custody of [Child]. Father was provided alternate weekends from Friday at 6:00 P.M. to Sunday at 6:00 P.M. The Order further set forth a summer schedule which granted Father alternating weeks beginning Sunday at 6:00 P.M. to the following Sunday at 6[:00] P.M.

On August 1, 2013[,] the parties entered into an Agreed Order providing the parties with equal physical custody of the child year-round. The custody schedule followed an alternating weekly schedule.

The [c]ourt issued Findings of Fact and an accompanying Custody Order on September 22, 2016, pursuant to 23 Pa.C.S.[] § 5328, after hearings on February 3, 2016, August 22, 2016, and September 6, 2016, an *in camera* interview of the child on February 5, 2016, and after review of the transcripts of the proceedings before the Honorable Patricia E. Coonahan from April 2, 2015.

Those Findings noted that Father filed three Emergency Petitions for Modification of the Agreed Order of January 3, 2012, all of which sought sole physical and legal custody of [Child]. Of note, this [c]ourt stated that, should Father be granted sole physical and legal custody, he would likely completely remove Mother as an influence from [Child]'s life. Moreover, Father has expressed no interest in maintaining the child's relationship with her step-brothers or Mother's extended family. On the other hand, Mother felt the child's relationship with Father was important and that she would encourage continuing contact between Father and [Child]. This [c]ourt's *in camera* interview of the child in 2016 revealed her desire for the 50/50 schedule to remain the same.

Almost six months later, on February 1, 2017, Father filed an Emergency Petition for Special Relief, which simply stated that Mother failed to respond to his request that she switch an aggregate of thirteen (13) days with him due to his need to seek immediate medical attention. That same day, an Order was issued directing the parties to co-parenting counseling[,] where they resolved the matter.

Shortly after, however, on February 15, 2017, Mother filed a Petition for Contempt, in which she requested a shift in [Child]'s school from private to public school. Mother alleged that Father has repeatedly failed to transport [Child] to school and that he completely refuses to share any information or documentation

relating to [Child]'s medical, educational or extracurricular activities. Mother further alleged that Father has actively resisted all of her attempts to cooperate and co-parent, as directed in the [c]ourt Orders of February 4, 2016, April 22, 2016, September 22, 2016 and February 1, 2017.

Following a Short List proceeding on June 5, 2017, the undersigned again directed the parties to co-parenting counseling to address the school issue, which was unsuccessful.

In the August 8, 2017, Agreed Order, following partial testimony, the parties agreed that Mother would have primary physical custody of [Child] due to Father's abrupt decision to accept a teaching assignment in Poland for the 2017-18 academic year. The parties further agreed that [Child] would attend McKinley Elementary School in the Abington School District for 2017-18 academic year. Father was also to provide Mother with [Child]'s CHIP card so that she could enroll [Child] under her medical insurance, and Mother was to notify Father upon obtaining a dentist for [Child]. The parties also agreed to find a mutually acceptable therapist for co-parenting counseling.

On November 29, 2017, Father filed yet another Petition to Modify, as he was abruptly returning from Poland on December 21, 2017, and requested primary physical custody of [Child].

Following another Short List proceeding, the January 30, 2018, Interim Order directed the parties to commence family therapy "**FORTHWITH**" to focus on enabling Father to have a gradually increased custodial schedule. The Order also provided Father with partial physical custody every Wednesday after school overnight through Thursday morning, as well as alternate weekends from Friday after school overnight through Sunday at 6[:00 P.M.]

Rather than focus on resolving their issues, and despite being represented by counsel, Father personally filed three additional Petitions on February 14, 2018. The first was a Petition for Contempt, alleging that Mother has abused alcohol during her custodial time, that she has failed to follow through with contacting the co-parenting counselor, and that Mother purposefully disabled [Child]'s cellphone (given to her by Father before leaving for Poland) so as to obstruct their ability to communicate. Father claimed that this interference was the main reason he returned early from his overseas teaching assignment.

The second was yet another Emergency Petition to Modify Custody, requesting that the August 1, 2013, Agreed Order (which provided shared legal and equal physical custody) be reinstated." His Petition, again, alleged Mother that [*sic*] disabled [Child]'s cellphone, and he pointed to specific instances where Mother has come in contact with law enforcement (yet notably, Father did not provide actual police reports or records otherwise to substantiate these allegations).

Father's third pleading was a Petition for Special Relief, which "demanded" the undersigned recuse himself based on perceived disrespect toward Father.

Following a Short List proceeding, the April 16, 2018, Interim Order noted the parties had not yet commenced family therapy as directed in the numerous aforementioned Court Orders and directed the parties to select a therapist or to submit two names to the undersigned for selection.

Due to the parties' inability to reach a consensus, the May 1, 2018, Order was entered in which the [c]ourt appointed Harry Carl Amarnick and it was anticipated that at least four (4) joint therapy sessions would occur prior [to] the June 2018 Short List.

A few days later, the May 7, 2018, Order was entered which denied Father's Motion for Recusal.

Following yet another Short List proceeding, the June 27, 2018, Interim Order noted the parties had *still* not yet commenced family therapy and directed the parties to agree upon a replacement therapist for Harry Carl Amarnick; however, this never occurred.

The Order also specifically directed that a protracted hearing would be scheduled only upon the following: (i) the parties' attendance of an aggregate of six (6) months' of co-parenting sessions; (ii) Father's verification that he provided Mother with [Child]'s dental and CHOP medical records; and (iii) the parties' utilization of the "Our Family Wizard" program as an exclusive means of communication.

Several months later, on January 18, 2019, Father filed another Emergency Petition to Modify, requesting sole legal and physical custody of [Child].  He alleged that he attempted to attend joint co-parenting sessions but that Mother interfered with scheduling future appointments after the second session.  Once

again, Father also pointed to the same law enforcement contact Mother and household members have had, yet again still failed to provide any documentation of those alleged incidents.

The January 24, 2019, Order directed the parties to an expedited Custody Conciliation Conference, in which the February 5, 2019, Conciliator's Report summed up the dynamics of this case in a nutshell: "*[t]hese parties require more than co-parenting counseling. Their joint inability to _attempt_ to work together indicates fundamental issues that both parties need to work through. Mother believes that she is right. Father believes that not only is he right, but that Mother is wrong. This child is caught in their web of distrust*."

On March 4, 2019, Mother failed to appear for a Short List proceeding and an Order that day directed the parties to participate in one additional co-parenting session with Harry Amarnick prior to the protracted [h]earing.

On April 4, 2019, the undersigned presided over a protracted [h]earing on five (5) of Father's [p]etitions and Mother's Petition for Contempt (related to co-parenting).[1] On April 10, the undersigned conducted an *in[]camera* interview of [Child].

After a review of the pleadings and consideration of all the testimony and Exhibits presented at the April 4th Hearing, as well as the [*in camera*] interview of [Child], the undersigned entered the May 31, 2019, Order which maintained shared legal custody and reinstated the alternating weekly physical custody schedule per the parties' Agreed Order of August 1, 2013, and as later confirmed by the undersigned in the Court Order of September 22, 2016.

Aside from the custodial schedule, the Order also delineated the parties' need for co-parenting and individual therapy, as the large majority of the issues brought before this [c]ourt clearly stem from this underlying problem: their joint inability to attempt

---

[1] Mother and Father were present and represented by counsel, and each testified on their own behalf. In addition, Mother presented the testimony of S.P., maternal aunt.

to work together which indicates fundamental issues that both parties need to work through.

> In essence, the [c]ourt realized that little to nothing had changed since the issuance of its comprehensive September 22, 2016, Findings of Fact. The parties simply refuse to cooperate and co-parent *in the best interest of [Child]*, but rather continue to blame each other without seeing how their own refusal to work together has detrimentally affected [Child]. In the May 31, 2019, Order, the undersigned provided that if the parties desired Findings of Fact, either could request so within five (5) days, and both parties timely did so. As a result, comprehensive Findings of Fact, consisting of twenty-five (25) pages, were issued on July 1, 2019.

Trial Court Opinion ("T.C.O."), 7/23/19, at 1-7 (emphasis in original) (footnotes omitted).

Father, through counsel, filed a timely notice of appeal on June 21, 2019, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

A. Whether the trial court erred in entering a custody order after a trial without issuing Findings of Fact?

B. Whether the trial court erred in entering a custody order after a trial without issuing an opinion setting forth a discussion of the sixteen factors required by 23 Pa.C.S.[] section 532[8] in the custody determination?

C. Whether the trial court erred in entering an order for shared legal and physical custody of the child?

D. Whether the trial court erred and/or abused its discretion in requiring the child to remain in the Abington [S]chool [D]istrict despite evidence which favored private school for the child?

E. Whether the trial court erred and/or abused its discretion in ordering that the child remain in [M]other's home despite

- 6 -

evidence of drug use, neglect and truancy by household members?

F. Whether the trial court abused its discretion and demonstrated a clear bias against [Father] during the [c]ourt proceedings and in the Findings of Fact prepared by the trial judge?[2]

Father's Brief at 2-3.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.

§§ 5321-5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted); *see*

*also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa.Super. 2015) *appeal denied*, 635

Pa. 754, 129 A.3d 521 (2016).

---

[2] While Father did not raise his sixth issue related to bias in his Rule 1925 concise statement, to the extent that Father's issues are interconnected and the issue of bias was raised therein and in conjunction with his other issues, we find it preserved and address it below. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

This Court consistently has held:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting* *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody.  *See E.D. v. M.P.*, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011).  Specifically, Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, with regard to the Custody Act, we have stated as follows:

. . . "**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order."

***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa.Super. 2011) (emphasis in original). . . .The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa.Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa.Super. 2014).

In its Findings of Fact, the trial court thoroughly addressed the custody factors pursuant to Section 5328(a). Findings of Fact, 7/1/19, at 1-24. Of particular importance to the trial court throughout its analysis of the custody factors was Father's attitude towards Mother's role in Child's life. ***Id.*** By way of summary and conclusion, as to factor 16, the court stated:

(16) Another relevant factor.

The relevant factor that permeates this case above all else is the continuing concern by the [c]ourt regarding Father's dismissal of Mother's role in [Child]'s life. As stated in the 2016 Findings, *"Father fails to see that there can be other approaches to parenting issues and that rarely is there a "right way" or a "wrong way".*

Father's disdain for Mother and Mother's family, the very people in [Child]'s life that also love her, is so palpable as to influence [Child] as she begins to pick up on Father's cues.

- 11 -

Notably, Father is not close to any of his own family members. His negative attitude towards Mother's family, and towards Mother, on a continuous basis lead to the very clear belief that Father desires to create a world where only he exists for [Child]: no one else is relevant, no one else is as competent to care for her, [Child] only needs Father. This worldview is severely misplaced and potentially damaging to a child if not reversed.

This type of behavior leads the [c]ourt to believe that Father has embarked on a pattern of conduct that is symptomatic of parent alienation.

Parent alienation involves the "programming" of a child by one parent to denigrate the other "targeted" parent. The alienation involves a set of strategies including, but not limited to, bad-mouthing the other parent, creating the impression that the other parent is dangerous or incompetent and belittling the targeted parent.

Every parent has a fundamental right to have a loving and unthreatened relationship with their child (absent neglect or abuse). To be denied that right by the other parent, without any justification, is itself a form of child abuse. Unfortunately, Father is incapable of seeing the impact that his behavior is having on [Child]. The damage to a child in this situation can be life-long and irreversible if proactive measures are not implemented.

As indicated in the September 22, 2016, Order and the May 31, 2019, Order accompanying these Findings, Father is encouraged to pursue individual therapy. If he is genuinely intent upon improvement, for his child's benefit, he will do so (and provide copies of the 2016 Findings and these Findings to the professional).

The accompanying Order also, once again, strongly encourages co-parenting "which is vitally important to the ongoing best interest of [Child]". The ability to work respectfully and collaboratively for [Child] going forward is essential.

A question remains as to whether Father will truly reflect upon these Findings, and address the issues that are identified, in the best interest of his child.

In the event the reinstatement of 50/50 custody is not successful, in the end, a shift of primary custody back to Mother may be necessary (or a more limited or even supervised custodial

schedule and/or a formal parental alienation program for the child).

*Id.* at 22-24 (emphasis in original).

Turning to Father's issues raised on appeal, we address his first two issues together as they are interrelated and Father combines them in his brief. Father argues that the trial court failed to address the sixteen custody factors set forth by 23 Pa.C.S. § 5328(a) in its May 31, 2019, custody order. Father's Brief at 3. Father further asserts that the court failed to issue Findings of Fact until July 1, 2019, the last day either party was able to file a timely appeal. *Id.* at 39-41.

As to these issues, the trial court reasoned as follows:

Here, Father's first and second [i]ssues are both entirely moot, as the [c]ourt held a protracted [h]earing on April 4, 2019, conducted an *in camera* interview of the minor child on April 10, 2019, and issued the May 31, 2019, Custody Order which delineated what it considered to be the most glaring issue in this ongoing custody litigation: the parties' complete inability to communicate and co-parent. The May 31st Order strongly encouraged the parties to participate in co-parenting counseling as well as individual counseling. As previously stated, little to nothing has changed within this family dynamic since the 2016 litigation other than the need, now more than ever, for the parties to learn to work together in *[Child]'s best interests*.

The May 31st Order specifically noted that extensive Findings of Fact, consisting of thirteen (13) pages, accompanied the prior Custody Order of September 22, 2016 (which resulted after a three-day protracted Hearing and a previous in-camera interview of [Child]). In addition, the Order also provided that either party could submit a request for Findings of Fact within five (5) business days of the May 31st Order, which both parties timely did.

As a result, this [c]ourt issued its Findings of Fact on July 1, 2019. These extensive Findings, at twenty-five (25) pages, fully delineated each of the custody factors as the [c]ourt's rationale for maintaining the shared legal and reinstating the shared

- 13 -

physical custody schedule as set forth in the August 1, 2013, Agreed Order (and confirmed by the undersigned in the September 22, 2016 Order).

Notably, interspersed throughout the July 2019 Findings (and as previously noted in the May 31st Order) are references to the September 22, 2016, Custody Order and Findings of Fact, as almost every instant issue was analogous or identical to those discussed in 2016; in particular, again, the parties' complete inability to communicate, even via email or the "Our Family Wizard" program, which has clearly had an adverse effect on every aspect of their approach to custody of the minor child.

It cannot be overstated that the parties are stuck in an ever-revolving [c]ourtroom door over the power dynamics in their relationship with [Child]. Although Mother attempts to co-parent with Father, her efforts have been repeatedly and completely rejected by him as he sees himself as the "superior" or "better" parent. In this sense, Father appears directed at the complete alienation of [Child] towards Mother, which is evident based on his pleadings alone, as well as his substantive testimony throughout multiple courtroom proceedings over a three (3) year time period.

In any event, Father's first and second [i]ssues are entirely moot, as the [c]ourt timely issued extensive Findings of Fact, consisting of twenty-five (25) pages, which addressed each § 5328 custody factor and fully delineated its reasoning for maintaining an equally shared legal and reinstatement of a shared physical custody schedule.

Accordingly, the within [i]ssue is without merit, is not supported by the facts in this matter, is deemed moot, and should, therefore, be dismissed.

T.C.O. at 9-11.

With this, we agree. For the reasons stated by the trial court, Father's claims are without merit.

With the remainder of his issues, which we consider together as they are interrelated, Father further challenges the trial court's determinations as to the Section 5328(a) factors and award of custody. Father's Brief at 42-48.

- 14 -

In so arguing, Father highlights concerns as to Mother and her household. *Id.* at 42-45. Specifically, Father indicates concern as to members of Mother's household, including Mother's boyfriend, and Mother's son, Child's half-brother, and his girlfriend. *Id.* at 44-45. Additionally, Father asserts bias on the part of the trial court in its analysis of the custody factors.[3] *Id.* at 46-53. Notably, Father concludes,

> The tone of the [c]ourt's Order, Findings of Fact, and Opinion is consistently anti-Father to the extent that the [c]ourt has difficulty with crediting Father with the few things even the Judge must admit favors [] Father's request for custody. In discounting the chaos at Mother's home, and failing to incorporate testimony that favored Father's request for full custody, the Judge became a participant in this custody case rather than the arbiter. The fact that Father is retired, able to provide reliable transportation, willing to help [] Child with homework and transport and support [] Child in extracurricular activities are all discounted by the Judge as factors in Father's favor. Instead[,] the Judge views these facts as evidence of Father's controlling nature. Meanwhile, [] Mother's many difficulties and chaotic household are minimized wherever possible, allowing the Judge to feel justified in leaving her with 50% of the custodial time. . . .

*Id.* at 53-54.

With regard to the custody factors, we have stated that the trial court is required to consider all of the Section 5328(a) factors in entering a custody

---

[3] Father himself states in his brief, "Again, many of the matters complained of on appeal cross over into, and are intertwined with, others." Father's Brief at 42. As such, Father addresses his third, fourth, and fifth issues together. *Id.* at 42-46. While arguing bias throughout this discussion, he does, however, provide a separate discussion of his sixth issue of bias. *Id.* at 47-53. As we find this largely a challenge to the trial court's analysis of the custody factors, as are his challenges to his third, fourth, and fifth issues, we consider the remainder of Father's issues together.

order. ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa.Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa.Super. 2013). Critically, as we stated in ***M.J.M.***:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. ***See A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

***Id.*** (emphasis added). Further, we have also noted that, while the primary caretaker doctrine is no longer viable, a court may still consider a parent's role as primary caretaker in its consideration of the custody factors.

> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. As discussed above, a trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

***Id.***

As we construe this issue, we interpret the issue at its core as a dispute to the trial court's findings of fact and determinations regarding credibility and weight of the evidence, as well as the weight attributed to certain factors.

Father, in essence, questions the trial court's conclusions and assessments and seeks this court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As we stated in **King v. King**, 889 A.2d 630, 632 (Pa.Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." (*quoting* **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa.Super. 2005)). After a thorough review of the record, we find no abuse of discretion.

In the case *sub judice*, the trial court exhaustively and reasonably analyzed and addressed each factor under Section 5328(a). **See** Findings of Fact, 7/1/19, at 1-24. After careful review of the record, we determine that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As such, Father's claims are without merit.

Accordingly, for the foregoing reasons we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/4/20